# MINNESOTA *v.* BRUNDAGE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF MINNESOTA.

No. 159. Argued February 28, 1901. — Decided March 18, 1901.

The principle reaffirmed that when the petitioner is in custody by state authority for an act done or omitted to be done in pursuance of a law of the United States, or of an order, process or decree of a court or judge thereof; or where, being a subject or citizen of a foreign State, and domiciled therein, he is in custody, under like authority, for an act done or omitted under an alleged right, title, authority, privilege, protection or exemption claimed under the commission, or order, or sanction of any foreign State, or under color thereof, the validity and effect whereof depend upon the law of nations; in such and like cases of urgency, involving the authority and operations of the General Government, or the obligations of this country to, or its relations with, foreign nations, the courts of the United States have frequently interposed by writs of *habeas corpus* and discharged prisoners who were held in custody under state authority; so, also, when they are in the custody of a state officer, it may be necessary, by use of the writ, to bring them into a court of the United States to testify as witnesses.

But the power of the Federal court upon *habeas corpus* to discharge one held in custody by state officers or tribunals in violation of the Constitution of the United States ought not to be exercised in every case immediately upon application being made for the writ. Except in cases of emergency, such as are above defined, the applicant should be required to exhaust such remedies as the State gives to test the question of the legality, under the Constitution of the United States, of his detention in custody.

THE case is stated in the opinion of the court.

*Mr. W. B. Douglas* for appellant.

*Mr. William D. Guthrie* for appellee. *Mr. Albert H. Veeder* was on his brief.

MR. JUSTICE HARLAN delivered the opinion of the court.

The appellee Brundage was arrested under a warrant issued

by the Municipal Court of Minneapolis, Minnesota, upon the complaint under oath of the Inspector of the State Dairy and Food Department of that State charging him with having violated a statute of Minnesota approved April 19, 1899, entitled " An act to prevent fraud in the sale of dairy products, their imitations or substitutes, to prohibit and prevent the manufacture or sale of unhealthy or adulterated dairy products, and to preserve the public health." Gen. Laws, Minnesota, 1899, c. 295.

The specific offence charged was that the accused, in the county of Hennepin, Minnesota, "did wilfully, unlawfully and wrongfully offer and expose for sale, and have in his possession with intent to sell, a quantity of a certain compound designed to take the place of butter, and made in part from animal and vegetable oils and fats not produced from milk or cream, said compound being an article commonly known as oleomargarine, and being then and there colored with a coloring matter whereby the said article and compound was made to resemble butter, contrary to the statutes in such case made and provided, and against the peace and dignity of the State of Minnesota."

He was adjudged to be guilty and to pay a fine of twenty-five dollars and costs, or in default thereof to be committed to the workhouse to undergo hard labor for thirty days, unless he sooner paid the fine and costs or was thence discharged by due course of law.

Having been taken into custody in execution of the judgment, Brundage presented his application to the Circuit Court of the United States for a writ of *habeas corpus*, alleging that he was restrained of his liberty in violation of the Constitution of the United States. That court held the statute to be unconstitutional and discharged the accused from the custody of the state authorities.

The State insists, upon this appeal, that the statute, at least in the particulars applicable to this case, was consistent with the Constitution of the United States.

This question is one of great importance, but we do not deem it necessary now to consider it; for in our opinion the Circuit Court should have denied the application for the writ of *habeas corpus*, without prejudice to a renewal of the same after the

accused had availed himself of such remedies as the laws of the State afforded for a review of the judgment in the state court of which he complains.

We have held, upon full consideration, that although under existing statutes a Circuit Court of the United States has jurisdiction upon *habeas corpus* to discharge from the custody of state officers or tribunals one restrained of his liberty in violation of the Constitution of the United States, it is not required in every case to exercise its power to that end immediately upon application being made for the writ. "We cannot suppose," this court has said, *Ex parte Royall*, "that Congress intended to compel those courts, by such means, to draw to themselves, in the first instance, the control of all criminal prosecutions commenced in state courts exercising authority within the same territorial limits, where the accused claims that he is held in custody in violation of the Constitution of the United States. The injunction to hear the case summarily, and thereupon 'to dispose of the party as law and justice require,' (R. S. § 761,) does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the State, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution. When the petitioner is in custody by state authority for an act done or omitted to be done in pursuance of a law of the United States, or of an order, process or decree of a court or judge thereof; or where, being a subject or citizen of a foreign State, and domiciled therein, he is in custody, under like authority, for an act done or omitted under an alleged right, title, authority, privilege, protection or exemption claimed under the commission, or order, or sanction of any foreign State, or under color thereof, the validity and effect whereof depend upon the law of nations; in such and like cases of urgency, involving the authority and operations of the General Government, or the obligations of this country to, or its relations with, foreign na-

tions, the courts of the United States have frequently interposed by writs of *habeas corpus* and discharged prisoners who were held in custody under state authority. So, also, when they are in the custody of a state officer, it may be necessary, by use of the writ, to bring them into a court of the United States to testify as witnesses." *Ex parte Royall,* 117 U. S. 241, 251; *Ex parte Fonda,* 117 U. S. 516, 518; *In re Duncan,* 139 U. S. 449, 454; *In re Wood,* 140 U. S. 278, 289; *McElvaine* v. *Brush,* 142 U. S. 155, 160; *Cook* v. *Hart,* 146 U. S. 183, 194; *In re Frederich,* 149 U. S. 70, 75; *New York* v. *Eno,* 155 U. S. 89, 96; *Pepke* v. *Cronan,* 155 U. S. 100; *In re Chapman,* 156 U. S. 211, 216; *Whitten* v. *Tomlinson,* 160 U. S. 231, 242; *Iasigi* v. *Van De Carr,* 166 U. S. 391, 395; *Baker* v. *Grice,* 169 U. S. 284, 290; *Tinsley* v. *Anderson,* 171 U. S. 101, 105; *Fitts* v. *McGhee,* 172 U. S. 516, 533; *Markuson* v. *Boucher,* 175 U. S. 184.

There are cases that come within the exceptions to the general rule. In *Loney's* case, 134 U. S. 372, 375, it appeared that Loney was held in custody by the state authorities under a charge of perjury committed in giving his deposition as a witness before a notary public in Richmond, Virginia, in the case of a contested election of a member of the House of Representatives of the United States. He was discharged upon a writ of *habeas corpus* sued out from the Circuit Court of the United States, this court saying: "The power of punishing a witness for testifying falsely in a judicial proceeding belongs peculiarly to the government in whose tribunals that proceeding is had. It is essential to the impartial and efficient administration of justice in the tribunals of the nation, that witnesses should be able to testify freely before them, unrestrained by legislation of the State, or by fear of punishment in the state courts. The administration of justice in the national tribunals would be greatly embarrassed and impeded if a witness testifying before a court of the United States, or upon a contested election of a member of Congress, were liable to prosecution and punishment in the courts of the State upon a charge of perjury, preferred by a disappointed suitor or contestant, or instigated by local passion or prejudice." So, in *Ohio* v. *Thomas,* 173 U. S. 276, 284–5, which was the case of the arrest of the acting governor

of the Central Branch of the National Home for Disabled Volunteer Soldiers, at Dayton, Ohio, upon a charge of violating a law of that State, the action of the Circuit Court of the United States discharging him upon *habeas corpus,* while in custody of the state authorities, was upheld upon the ground that the state court had no jurisdiction in the premises, and because the accused, being a Federal officer, " may, upon conviction be imprisoned as a means of enforcing the sentence of a fine, and thus the operations of the Federal Government might in the meantime be obstructed." The exception to the general rule was further illustrated in *Boske* v. *Comingore,* 177 U. S. 459, 466–7, in which the applicant for the writ of *habeas corpus* was discharged by the Circuit Court of the United States, while held by state officers, this court saying : " The present case was one of urgency, in that the appellee was an officer in the revenue service of the United States whose presence at his post of duty was important to the public interests, and whose detention in prison by the state authorities might have interfered with the regular and orderly course of the business of the department to which he belonged."

The present case does not come within any of the exceptions to the general rule announced in the cases above cited. It is not, in any legal view, one of urgency. The accused does not, in his application, state any reason why he should not be required to bring the question involved in the prosecution against him before a higher court of the State and invoke its power to discharge him if in its judgment he is restrained of his liberty in violation of the Constitution of the United States. It cannot be assumed that the state court will hesitate to enforce any rights secured to him by that instrument ; for upon them equally with the courts of the Union rests the duty to maintain the supreme law of the land: *Robb* v. *Connolly,* 111 U. S. 624, 637. If the state court declined to recognize the Federal right specially claimed by the accused, the case could be brought here for review.

After observing that the questions of constitutional law arising in this case had been determined in *Schollenberger* v. *Pennsylvania,* 171 U. S. 1, and *Collins* v. *New Hampshire,* 171 U. S.

30, adversely to the present contention of the State, and that there was jurisdiction to discharge the petitioner on *habeas corpus*, the Circuit Court said : " Even then, for reasons of comity, such power will seldom be exercised by the Circuit Court to discharge a petitioner held under process from a state court, even after conviction by the trial court, unless large interests affecting the business of many or the rights of the public are so involved that serious consequences will follow from the delay which will be caused by the prosecution of a writ of error to a final decision, or unless the question has already been decided by the Supreme Court of the United States, whose decision the state court has disregarded in the proceeding. State statutes prohibiting the importation from other States and sale of articles of commerce, especially articles of food, or adapted for general use, are regarded as affecting general interests and the rights of the public; and *habeas corpus* has frequently been resorted to in cases of imprisonment for violation of such statutes." *In re Brundage*, 96 Fed. Rep. 963, 969.

Among the cases cited in support of the action of the Circuit Court are *Minnesota* v. *Barber*, 136 U. S. 313, and *Plumley* v. *Massachusetts*, 155 U. S. 461. It must be admitted that in the first named case the general rule announced in prior and subsequent cases was not applied. The reasons for not then applying it do not appear from the opinion of the court. It may be that the precise point now under examination was not called to its attention. *Plumley* v. *Massachusetts* is not in point, for it came to this court upon writ of error to the highest court of Massachusetts.

It is undoubtedly true that the state enactment in question may in its operation affect the business of many, and in some degree, but indirectly, the rights of the public; but that consideration is not sufficient to justify such interference by the Federal court as will interrupt the orderly course of proceedings in the state court. We do not think that the exercise by a Federal court of its power upon *habeas corpus* to discharge one held in custody by the state authorities and charged with a violation of a state enactment should be materially controlled by any consideration of the extent of particular business

interests that may be affected by a prosecution instituted in a state tribunal against him, or of the indirect effect of his detention in custody upon the rights of the general public. Nor do we think that the Circuit Court should have interfered with the custody of the appellee because in its opinion the action of the Municipal Court of Minneapolis was inconsistent with the judgments of this court in the *Schollenberger* and *Collins* cases. Upon that question the state court was entitled to form its own opinion, and give judgment accordingly. Whether, in view of the judgments in the *Schollenberger* and *Collins* cases, the state court should have held the Minnesota statute to be repugnant to the Constitution of the United States, it is not necessary now to say. Besides the record does not show that the attention of the Municipal Court of Minneapolis was called to those cases; much less is there any reason to suppose that it deliberately refused to accept the decisions of this court as controlling upon questions arising under the Constitution of the United States. As disclosed by the record, the case, we repeat, is not one of urgency within the meaning of our decisions, and does not suggest any adequate reason why the appellee should not be required, before applying to the Circuit Court of the United States to be discharged upon *habeas corpus*, to seek at the hands of the higher courts of the State a reversal of the judgment rendered against him in the Municipal Court of Minneapolis.

Without expressing any opinion as to the validity of the Minnesota statute, the judgment of the Circuit Court must be reversed, with directions to dismiss the application for a writ of *habeas corpus*, without prejudice to a renewal of it when the appellee shall have exhausted the remedies provided by the State for a review of the judgment of the Municipal Court of Minneapolis.

*Reversed.*