## Y. SOGA, Y. TASAKA, M. NEGORO and F. K. MAKINO
### *vs.* WILLIAM P. JARRETT.

### March 22, 1910.

*Territorial courts of Hawaii—Relation of same to federal court in Hawaii:* The relation between the Hawaiian territorial courts and the federal court in Hawaii is substantially the same as that existing between the state courts and the federal circuit and district courts within the same territorial limits.

*Habeas corpus—Jurisdiction of federal court where petitioner is in custody under judgment of territorial court:* Where a prisoner is in custody under a void judgment of a territorial court this court has jurisdiction to release him upon *habeas corpus.*

*Same—Exercise of jurisdiction:* But this court ought not to exercise its jurisdiction except in exceptional or peculiarly urgent cases, and the mere fact that a petitioner is deprived of his liberty in violation of his rights under the federal Constitution does not necessarily make out an exceptional case nor one of peculiar urgency.

Petition for a Writ of *Habeas Corpus.*

*J. Lightfoot,* Attorney for Petitioners.

*E. W. Sutton* and *W. B. Lymer,* Deputies Attorney General of the Territory of Hawaii, and *Kinney, Ballou, Prosser & Anderson,* Counsel for the Respondent.

ROBERTSON, J.  The petitioners have filed an application praying that a writ of *habeas corpus* be issued directed to the respondent and commanding him to bring their bodies before this court in order that they may be restored to their liberty.

The petitioners allege that they are subjects of His Imperial Majesty the Emperor of Japan, residing at Honolulu, in this Territory; that they are now imprisoned, detained, confined and restrained of their personal liberty in a certain prison known as Honolulu jail by the respondent, who is the sheriff of the City and County of Honolulu; that the cause of such imprisonment is, according to the best of their knowledge and belief, as follows: That on or about the 14th day of June, 1909, a

certain sworn complaint was filed in the Circuit Court of the
First Judicial Circuit of the Territory of Hawaii, charging
them with the crime of conspiracy, a copy of which complaint
is attached to the petition; that upon said complaint the peti-
tioners were compelled to undergo public trial in said court;
that during the said trial a certain juror was excused by the court,
the prosecution and defense consenting thereto; that at the con-
clusion of such so-called trial, the so-called jury consisting of
eleven men returned a so-called verdict finding the petitioners
guilty of conspiracy in the third degree; that thereafter the
petitioners were sentenced by the judge of said court to serve
a term of ten months, without hard labor, and to pay a fine of
three hundred dollars each, and costs; that thereafter, and on,
to-wit, the 16th day of March, 1910, a certain mittimus was
issued out of said court, under the authority of which the peti-
tioners were imprisoned and detained by the respondent; that
no indictment or presentment by a grand jury had been found
charging the petitioners with the aforesaid crime; and it is
alleged that the illegality of their imprisonment consists in
this: That the circuit court was without jurisdiction to try the
petitioners and to pronounce judgment against them for the
reason that said trial was had in contravention of their rights
under the Fifth Amendment to the Constitution; that the court
was without jurisdiction of the petitioners for the reason that
said trial was had in contravention to their rights under the
Third Article of the Constitution and the Sixth Amendment,
providing for the trial of all criminal prosecutions by jury, ex-
cept in cases of impeachment; also, that said court was without
jurisdiction for the reason that said trial was had in contraven-
tion of petitioners' rights under section 83 of the act of Con-
gress to provide a government for the Territory of Hawaii;
that the petitioners were not informed of the nature and cause
of the accusation against them, in contravention of their rights
under the Sixth Amendment; that they were compelled to be
witnesses against themselves in contravention of their rights
under the Fifth Amendment; that evidence was offered and re-

ceived by the court during said trial in violation of their rights
under the Fourth Amendment; and that evidence was offered
and received during said trial in contravention of their rights
under the third article of the treaty of commerce and naviga-
tion concluded between the United States and the Empire of
Japan on the 22nd day of November, 1894.

No other pleadings have been filed, but by mutual arrange-
ment of counsel, with the consent of court, arguments were
made upon the question whether, upon the allegations of the
petition, the writ should issue.. For the purposes of this de-
cision, therefore, it will be assumed that these allegations are
all true.

Several objections were raised by the respondent's counsel
touching the form of the petition, but these will not be noticed.

The respondent invokes the proposition that the federal
courts ought not, and do not, except in extraordinary and un-
usual cases, of which this is not one, interfere by means of the
writ of *habeas corpus,* with the execution of the judgments of
state courts in criminal cases, and contends that the principle
is applicable here because the relations between the local courts
of this Territory and the federal courts are practically the
same as those existing between the latter and the courts of the
several States.

Counsel for the petitioners, while conceding that the writ of
*habeas corpus* cannot be made to perform the functions of a
writ of error, submits that it may be shown on *habeas corpus*
that a judgment under which a person is being restrained of
his liberty is a nullity by reason of the lack of jurisdiction of
the court which pronounced it over the person or subject mat-
ter involved, and that, therefore, the party would be entitled
to be released from custody.

From this he argues that the writ should issue in this case
because the allegations of the petition show that the circuit
court proceeded without jurisdiction.

In support of his argument counsel refers to the following
cases: *Ex parte Wilson,* 114 U. S. 417; *Ex parte Bain,* 121

U. S. 1; *In re Sawyer,* 124 U. S. 201; *In re Coy,* 127 U. S. 731, and *Kaizo v. Henry,* 211 U. S. 146.

Those cases undoubtedly sustain counsel in his position that a person imprisoned under a void judgment is entitled to be released upon *habeas corpus,* but they by no means require or justify the issuance of the writ by this court under the circumstances alleged; they do not meet the contention of the respondent made as above stated.

The case of *Kaizo v. Henry* does not support the petitioners' claim to the writ asked for. In that case the application for the writ was first made to and denied by the Supreme Court of Hawaii. The right to the issuance of the writ from this court under such circumstances as are involved here was not a subject for discussion at any stage of that case. See *Minnesota v. Brundage,* 180 U. S. 499, referring to *Plumley v. Massachusetts,* 155 U. S. 461.

In each of the other cases cited, the petitioner was in custody under the judgment of a United States court, and the mere statement of the fact is sufficient to show their inapplicability to the question involved here, which is, whether the power and discretion of this court should be exercised under the circumstances set forth in the petition.

The Supreme Court of the United States has clearly laid down and often reiterated the principles which should govern a case like the one at bar.

Those principles have heretofore had the attention of this court.

In the *Matter of Marshall,* Estee's Reports, 34, in a petition for a writ of *habeas corpus,* the petitioner showed that he was imprisoned pursuant to a judgment of the Circuit Court of the First Judicial Circuit of the Hawaiian Islands, and based his claim for discharge from custody under the writ applied for upon the ground that he was tried, convicted and sentenced without a presentment or indictment by a grand jury; that he was found guilty by a verdict of nine out of a jury of twelve; that the offense charged against him was an "infamous crime";

and that the whole proceeding of the territorial courts was in violation of and contrary to the rights secured to him by the Fifth and Sixth Amendments to the Constitution of the United States. Judge Estee said:

" The question presented is: Can this court, except in very rare and extreme cases, review on *habeas corpus* the verdict and judgment of the highest territorial court of Hawaii in a criminal case wherein a constitutional question is claimed to be involved, and overrule the action of that court? From the date of the passage of the judiciary act of 1867 until now, the Supreme Court of the United States, while always holding that a United States district or circuit court had the power in extreme cases to summarily discharge a party from custody who is restrained of his liberty in violation of the Constitution of the United States, yet the same court has uniformly held that except in the most extreme cases, the true course for the petitioner was to sue out a writ of error from the Supreme Court of the United States, and thus have the constitutionality of the conviction settled by the only court in the land whose judgment on constitutional questions is final. This rule was adopted because, although the discretionary power existed, yet it was of more than doubtful propriety for a single United States district or circuit judge to interfere with the judicial procedure of a state or territorial court when dealing with criminal cases."

And after citing and quoting from a number of cases decided in the Supreme Court of the United States, the learned judge said, "The above decisions which seem all to relate to the States, apply with equal force to the Territories." The petitioner was remanded.

In the *Matter of Mankichi*, Estee's Reports, 303, the writ was issued and the prisoner discharged from custody. In that case the petitioner had been tried in and by a circuit court of the Territory under a presentment charging him with the crime of murder, and had been convicted of the crime of manslaughter in the first degree, and sentenced to imprisonment at hard

labor for the term of twenty years. He sought his discharge upon the ground that he was being imprisoned in violation of his rights under the Fifth, Sixth and Seventh Amendments to the Constitution because of the fact that he was not indicted by a grand jury, nor convicted by the unanimous verdict of a jury of twelve men.

Before taking up the contentions of the petitioner upon their merits, Judge Estee said, " The question now presented is: Is this an exceptional case? I am compelled to believe that it is. Whatever the intention of the local territorial courts, their decisions upon this question are an attack upon the constitutional rights of the citizen affecting life and liberty, which are thereby made insecure. In view of all the circumstances, therefore, I think it would be in furtherance of public justice for me to exercise my discretion in this proceeding. I shall therefore consider the case under the writ."

It is familiar that the controversy involved in that case was a far-reaching one. It not only affected the petitioner at the bar but questioned the validity of the system of criminal procedure in vogue in Hawaii prior to the cession of sovereignty under the joint resolution of Congress for the annexation of these islands, on August 12th, 1898, as applied to cases arising thereafter and until the passage of the organic act on the 14th day of June, 1900, and thus affected a great many other prisoners. The case subsequently acquired a national reputation, but, though Judge Estee's views upon the merits of the case were disapproved by the United States Supreme Court, his action, in taking jurisdiction, was not criticized. It was in a way an exceptional case, but scarcely one of "peculiar urgency" within the principles laid down by the United States Supreme Court. This court went further than necessary in taking jurisdiction there.

In the recent case of *In the Matter of Atcherley,* decided on September 4, 1909 (Ante p. 404), Judge Woodruff, of this court, went exhaustively into the question involved in the case at bar. In that case a petition for a writ of *habeas corpus* was filed on

behalf of Dr. Atcherley who, it was shown, had been examined, pronounced insane, and committed to the insane asylum upon proceedings had under and pursuant to the provisions of act 149 of the Session Laws of 1909 of the legislature of the Territory of Hawaii. It was alleged and claimed that the statute was unconstitutional and void; that the petitioner was denied a trial by jury, and was being detained without due process of law; and that for these reasons the restraint of the petitioner was illegal and in violation of his rights under the Constitution.

The question there decided was put as follows: "Is this a case of such 'peculiar urgency' that this court should interpose at this time, instead of leaving the petitioner to his usual and final remedy in the territorial courts and, through them, in the Supreme Court of the United States?" It was answered in the negative after a searching investigation of all the applicable authorities.

The learned judge, in part, said: "It seems clear that the Supreme Court has never wavered in its exposition of the fundamental principles governing the use of the writ of *habeas corpus* by Federal courts when the petitioners are restrained through operation of state laws. * * * Without losing sight of the fact that 'want of jurisdiction of cause or person' is a fundamental principle; the Supreme Court, in cases from *Ex parte Royall,* 117 U. S. 241, to *Urquhart v. Brown,* 205 U. S. 179, has put forward with insistence a principle somewhat more easily applied, namely, that even when it is claimed that there was such want of jurisdiction, the correction of the mistake must be left to the state courts and finally through them to the Supreme Court of the United States unless in cases of 'peculiar urgency'."

The court also pointed out that the territorial courts in Hawaii sustain substantially the same relation to this court as the state courts do to the federal circuit and district courts, citing *Wilder's S. S. Co. v. Hind,* 108 Fed. 113, to which may be added, *Ex parte Wilder's S. S. Co.,* 183 U. S. 545, and *Equit-*

*able Life Ins. Co. v. Brown,* 187 U. S. 308. Should a distinction be drawn because of the prevalence of the dual sovereignty in a State, then the territorial courts must be considered in the light of courts of co-ordinate jurisdiction in such a matter as that in hand, and the result would be practically the same, for courts of co-ordinate jurisdiction should, on the principle of comity, and to promote concord, and to avoid conflicts, exercise a spirit of forbearance toward each other.

The result of the examination made in that case led the court to the irresistible conclusion that the petitioner should be remanded, and it was so ordered.

The thoroughness with which the subject was gone into by Judge Woodruff in that case renders it unnecessary to do more at this time than to point out that the principle there applied is controlling here. This may be done best by referring to some of the decisions of the United States Supreme Court which were there cited and upon which the conclusion arrived at rested.

*Ex parte Royall,* 117 U. S. 241: In that case, the petitioner alleged that he had been indicted and arrested and was being held for trial for an alleged violation of a statute of the State of Virginia; that the statute was repugnant to Article One of the Constitution of the United States, and that his detention was in violation of the Constitution. The United States circuit court, to which the petitioner applied for release under two petitions, dismissed them both on the ground that it was without jurisdiction to discharge the prisoner. On appeal to the Supreme Court it was held that although the ground assigned for dismissing the petitions was incorrect, the Supreme Court holding that the circuit court did have jurisdiction, the judgments should be affirmed on the ground that the petitioner had not shown such a case as would justify the circuit court in exercising its power. Mr. Justice Harlan, speaking for the court, said:

" We are of opinion that while the circuit court has the power to do so, and may discharge the accused in advance of his trial if he is restrained of his liberty in violation of the

national Constitution, it is not bound in every case to exercise such a power immediately upon application being made for the writ. We cannot suppose that Congress intended to compel those courts, by such means, to draw to themselves, in the first instance, the control of all criminal prosecutions commenced in state courts exercising authority within the same territorial limits, where the accused claims that he is held in custody in violation of the Constitution of the United States. The injunction to hear the case summarily, and thereupon 'to dispose of the party as law and justice require' does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution. When the petitioner is in custody by state authority for an act done or omitted to be done in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof; or where, being a subject or citizen of a foreign State, and domiciled therein, he is in custody, under like authority, for an act done or omitted under any alleged right, title or authority, privilege, protection, or exemption claimed under the commission, or order, or sanction of any foreign State, or under color thereof, the validity and effect whereof depend upon the law of nations; in such and like cases of urgency, involving the authority and operations of the general government, or the obligations of this country to, or its relations with, foreign nations, the courts of the United States have frequently interposed by writs of *habeas corpus* and discharged prisoners who were held in custody under state authority. So, also, when they are in custody of a state officer, it may be necessary, by use of the writ, to bring them into a court of the United States to testify as witnesses. The present cases involve no such considerations.

Nor do their circumstances, as detailed in the petitions, suggest any reason why the state court of original jurisdiction may not, without interference upon the part of the courts of the United States, pass upon the question which is raised as to the constitutionality of the statutes under which the appellant is indicted. The circuit court was not at liberty, under the circumstances disclosed, to presume that the decision of the state court would be otherwise than is required by the fundamental law of the land, or that it would disregard the settled principles of constitutional law, upon which is clearly conferred the power to decide ultimately and finally all cases arising under the Constitution and laws of the United States. * * * That these salutary principles may have full operation, and in harmony with what we suppose was the intention of Congress in the enactment in question, this court holds that where a person is in custody, under process from a state court of original jurisdiction, for an alleged offense against the laws of such State, and it is claimed that he is restrained of his liberty in violation of the Constitution of the United States, the circuit court has a discretion, whether it will discharge him, upon *habeas corpus,* in advance of his trial in the court in which he is indicted; that discretion, however, to be subordinated to any special circumstances requiring immediate action. When the state court shall have finally acted upon the case, the circuit court has still a discretion whether, under all the circumstances then existing, the accused, if convicted, shall be put to his writ of error from the highest court of the State, or whether it will proceed, by writ of *habeas corpus,* summarily to determine whether the petitioner is restrained of his liberty in violation of the Constitution of the United States."

I have quoted thus copiously from the opinion in that case because it covers so fully the field of discussion on the subject at hand, and because the case has since been cited with approval so many times.

*New York v. Eno,* 155 U. S. 89: In that case the appellee had petitioned the United States circuit court for a writ of

*habeas corpus* alleging that he was restrained of his liberty by the warden of the city prison in New York City under certain bench warrants issued upon indictments against him in the Court of General Sessions of the Peace of the City and County of New York which charged him with the commission of certain offenses over which that court "has not and never has had" jurisdiction. The petitioner prayed to be discharged from the custody of the state authorities. His principal contention appears to have been that the offenses with which he was charged were cognizable only in the courts of the United States. The circuit court, taking this view, issued the writ and ordered that the petitioner be discharged from custody. The Supreme Court reversed the judgment with directions to dismiss the writ and to remand the accused to the custody of the state authorities, saying, "Without considering the merits of the several questions discussed by counsel, we are of opinion that the circuit court erred in granting the prayer of the accused."

*Baker v. Grice,* 169 U. S. 284: In that case the United States Circuit Court for the Northern District of Texas had, upon *habeas corpus,* ordered the discharge of the petitioner from the custody of a Texas county sheriff upon the ground that the statute under which he had been indicted and was being detained was in conflict with the Constitution of the United States. The court said:

"It is an exceedingly delicate jurisdiction given to the Federal courts by which a person under an indictment in a state court and subject to its laws may, by the decision of a single judge of the Federal court, upon a writ of *habeas corpus,* be taken out of the custody of the officers of the State and finally discharged therefrom, and thus a trial by the state courts of an indictment found under the laws of a State be finally prevented. Cases have occurred of so exceptional a nature that this course has been pursued. Such are the cases of *In re Loney,* 134 U. S. 372, and *In re Neagle,* 135 U. S. 1, but the reasons for the interference of the Federal court in each of

those cases were extraordinary, and presented what this court regarded as such exceptional facts as to justify the interference of the Federal tribunal. Unless this case be of such an exceptional nature, we ought not to encourage the interference of the Federal court below with the regular course of justice in the state court."

And, after reviewing the facts there involved, the court said:

" Upon the facts appearing herein, we think no sufficient case was made out for the exercise of the jurisdiction of the circuit court. We come to this decision irrespective of the question of the validity of the state statute and without passing upon the same or expressing any opinion in regard thereto."

The judgment of the circuit court was reversed with instructions to enter an order remanding the prisoner to the custody of the sheriff.

*Tinsley v. Anderson,* 171 U. S. 101: That case was considered upon a writ of error to the Court of Criminal Appeals of the State of Texas, and upon appeal from the Circuit Court of the United States for the Eastern District of Texas. In the appeal case, Tinsley had obtained the issuance of a writ of *habeas corpus* by the circuit court upon allegations to the effect that he was being deprived of his liberty under an order of a Texas court but without due process of law and in violation of the Constitution of the United States. After a hearing, the circuit court dismissed the writ. The Supreme Court affirmed the judgment, and in the opinion pronounced by the Chief Justice said:

" The dismissal by the circuit court of the United States of its own writ of *habeas corpus* was in accordance with the rule, repeatedly laid down by this court, that the circuit courts of the United States, while they have power to grant writs of *habeas corpus* for the purpose of inquiring into the cause of restraint of liberty of any person in custody under the authority of a State in violation of the Constitution, a law or a treaty of the United States, yet, except in cases of peculiar urgency,

33—D

ought not to exercise that jurisdiction by a discharge of the person in advance of a final determination of his case in the courts of the State, and, even after such final determination, will leave him to his remedy to review it by writ of error from this court. This case shows no such circumstances as to require departure from this rule."

*Markuson v. Boucher,* 175 U. S. 184: In that case the appellant had obtained from a United States district court a writ of *habeas corpus* upon the allegations that he was confined in the state penitentiary of North Dakota upon a pretended judgment and sentence of a district court of that State, which judgment and sentence had been pronounced under certain statutes of the State which violated the Fifth and Sixth Amendments to the Constitution of the United States, and Article One of the Fourteenth Amendment, by providing for the charging of a citizen with an infamous crime and compelling him to answer and be punished therefor without a presentment or indictment of a grand jury, and deprived the accused in a criminal prosecution of the right to a trial by an impartial jury of the State and district wherein the crime was committed, and permitted a conviction of one accused of crime without his being confronted with the witnesses against him; that they abridged the privileges and immunities of citizens of the United States and deprived them of liberty and property without due process of law and the equal protection of the laws. The petitioner had appealed to the Supreme Court of the State with the result that the judgment and sentence were affirmed. The district court dismissed the writ and the petitioner appealed. Mr. Justice McKenna, speaking for the unanimous court, in affirming the judgment, said:

" In the brief of appellant's counsel, and also in that of the attorney general of the State, as well as in oral argument, the constitutional points raised were argued at length. We are not disposed to consider them. We have frequently pronounced against the review by *habeas corpus* of the judgments of the

state courts in criminal cases, because some right under the Constitution of the United States was alleged to have been denied the person convicted, and have repeatedly decided the proper remedy was by writ of error.   *   *   *   The jurisdiction is more delicate, the reason against its exercise stronger, when a single judge is invoked to reverse the decision of the highest court of a State in which the constitutional rights of a prisoner could have been claimed and may be were rightly decided, or if not rightly decided, could be reviewed and redressed by a writ of error from this court.   The case at bar presents no circumstances to justify a departure from the rule or to relieve from the application of its reasons."

*Urquhart v. Brown,* 205 U. S. 179:  In that case the appellee had been tried in the Superior Court of Lewis County, in the State of Washington, upon a charge of murder.   The jury had acquitted him on the ground of insanity, and pursuant to a statute of the State the court committed him to jail as a person manifestly dangerous to the peace and safety of the community.   The accused, being in the custody of a sheriff under that order, made application to the Supreme Court of Washington for a writ of *habeas corpus.*   That court held that the statute was constitutional and that the order of the trial court was in strict conformity with its provisions, and denied his application to be discharged.   The appellee then obtained a writ of *habeas corpus* from the Circuit Court of the United States for the Western District of Washington, and that court held that the statute referred to was constitutional, but took the view that it had not been properly administered by the trial court in rendering its judgment, and that the imprisonment of the petitioner, without arraignment, and a fair opportunity to defend himself against charges lawfully preferred, and to produce evidence in his defense was a deprivation of his liberty by the State, without due process of law, and violated the national Constitution; and held that for that reason the commitment under which the petitioner was held was illegal and void.

The Supreme Court, speaking again through Mr. Justice Harlan, reiterated the views expressed in the foregoing and other analogous cases and concluded by saying:

" Without now expressing any opinion as to the constitutionality of the statute in question, or as to the mode in which it was administered in the state court, for the reasons stated the judgment of the circuit court must be reversed, with directions to set aside the order discharging the appellee, and to enter an order denying the application for a writ of *habeas corpus,* leaving the appellee in the custody of the State, with liberty to apply for a writ of error to review the above judgment of the Supreme Court of Washington."

It thus appears that although this court has the power to issue the writ as prayed for, the power ought not to be exercised under the circumstances alleged. The mere fact that the petitioners are in jail under a void judgment of the territorial court does not, as shown by the foregoing cases, constitute such an exceptional case, or a case of peculiar urgency, which would require this court to exercise its jurisdiction, or justify its exercise.

Those cases show clearly the position which has long been maintained by the Supreme Court with reference to the class of cases to which the one at bar belongs. Nothing that I might add would make the matter any clearer. It is quite evident that should I issue the writ and, finding the allegations of the petition to have been substantiated, discharge the petitioners from custody, the judgment would, on appeal, be reversed.

The ordinary and proper course for the petitioners to pursue would be that taken by the petitioner in the case of *Kaizo v. Henry,* supra, that is, to apply to the Supreme Court of the . Territory for a writ of *habeas corpus,* and if they should be able to show that the circuit court under whose judgment they are held, was without jurisdiction for any of the reasons alleged, it would be the duty of the Supreme Court to grant the writ and order the discharge of the petitioners, and if that court

should fail to do its duty upon any mistaken ground, the error would be rectified by the appropriate tribunal, namely, the Supreme Court of the United States. See the case of *Nielsen, Petitioner,* 131 U. S. 176.

Such a course would obviate the possiblity of an unseemly clash between this court and the territorial courts, and the final review of the matter would be had in the proper appellate court.

It is not necessary in this case that the writ should be issued and a hearing had. See *Ex parte Royall, supra,* wherein the rights of the party were considered and determined upon his petition for a writ.

The court being of the opinion, for the reasons shown, that if the writ had been, or were to be issued, the petitioners would have to be remanded, the prayer of the petition is denied.