**In re Scott Matthew HUCKE, Debtor.**

**Scott Matthew HUCKE, Plaintiff,**

**v.**

**STATE OF OREGON, By and Through the DIVISION OF CORRECTIONS, DEPARTMENT OF HUMAN RESOURCES; and Harl H. Haas, individually and in his capacity as a Circuit Court Judge for the Fourth Judicial District, State of Oregon, Defendants.**

**Bankruptcy No. 390–35394–H13.
Adv. No. 91–3124–H.**

United States Bankruptcy Court,
D. Oregon.

May 7, 1991.

See also 128 B.R. 675.

Michael R. Blaskowsky, Todd Trierweiler, Portland, Or., for plaintiff.

Daniel Rosenhouse, Asst. Atty. Gen., for defendants.

## OPINION

HENRY L. HESS, Jr., Chief Judge.

This matter came before the court upon the defendants' motion to dismiss and the plaintiff's motion for summary judgment. The defendants are represented by Daniel Rosenhouse, Assistant Attorney General for the State and the plaintiff is represented by Michael R. Blaskowsky and Todd Trierweiler both of Portland, Oregon.

The complaint herein alleges that, after the plaintiff filed a chapter 13 bankruptcy petition, the state revoked his probation because he failed to pay a restitution obligation according to the terms of the state court's probation order. The prayer seeks an order declaring the state court's judgment revoking the plaintiff's probation to be void as having been entered in violation of the automatic stay provided by 11 U.S.C. § 362(a) and for a mandatory injunction requiring the release of the plaintiff from the state correctional facility.

The following facts are undisputed. On May 29, 1990, Multnomah County Circuit Judge Harl Haas sentenced the plaintiff to a period of probation on certain conditions. Among the conditions was that the plaintiff pay the victim restitution and a compensatory fine.

On October 10, 1990, the plaintiff filed a chapter 13 proceeding in this court. The plaintiff listed the state and three other unsecured creditors. On October 16, 1990, the bankruptcy court notified the state of the filing of the bankruptcy case and the imposition of the automatic stay.

The chapter 13 plan dated 10-8-90 proposed to pay holders of allowed unsecured claims approximately 20% of the amount of their claims over a 36 month period. No objections to the plan or other pleadings were filed by any creditor including the state. On December 17, 1990, the bankruptcy court held a confirmation hearing to consider the debtor's proposed plan. No creditors appeared at the hearing and the court confirmed the plan by an order dated 1-11-91. The confirmation order was not appealed. The state has never filed in this case a motion for relief from the automatic stay of 11 U.S.C. § 362(a).

On January 14, 1991, the state court caused a letter to be mailed to the plaintiff. The letter alleged that the plaintiff was in violation of the conditions of his probation and ordered him to appear in Multnomah County Circuit Court for a hearing to consider revocation of his probation.

On February 8, 1991, the plaintiff appeared as ordered. At the hearing, Mr. Jim McIntyre, Deputy District Attorney, appeared on behalf of the State of Oregon. Mr. McIntyre's opening statement included the following:

"The case before the court is a probation violation hearing, the defendant having failed to comply with the court order of payment of restitution."

After some discussion about the reasons for the plaintiff's failure to pay the court-ordered restitution, the hearing was continued to March 1, 1991.

On March 1, 1991, the probation revocation hearing was resumed.

Thereafter, on March 5, 1991, the state court entered a judgment revoking the plaintiff's probation and sentencing him to 36 months confinement at the Oregon State Corrections Facility. The plaintiff is currently incarcerated at that facility.

The defendants filed a motion to dismiss the complaint on the grounds that the complaint fails to state a claim for relief and that this court is without subject matter jurisdiction to determine the matter. The defendants' memorandum in support of the motion to dismiss clarifies the grounds for the motion. This opinion addresses those grounds as well as the plaintiff's motion for summary judgment.

A. Does the Automatic Stay Prohibit the State Court from Revoking the Plaintiff's Probation?

Upon the filing of a petition in bankruptcy, a federal restraining order is auto-

matically imposed against all entities to prohibit the commencement or continuation of a judicial proceeding against the debtor that was or could have been commenced before the bankruptcy case was filed or to recover a claim against the debtor that arose before the filing of the bankruptcy petition. 11 U.S.C. § 362(a). This federal law preempts any contrary state law and is the supreme law of the land pursuant to the United States Constitution and well-recognized principles of constitutional law. In other words, where state and federal law conflict, state law must fail. See, *e.g.*, *International Longshoremen's Association, AFL–CIO v. Davis*, 476 U.S. 380, 393, 106 S.Ct. 1904, 1913, 90 L.Ed.2d 389 (1986).

The defendants argue that: "The automatic stay has nothing to do with this case." Defendants' Reply Memorandum Re Motion to Dismiss, p. 3. In support of this statement, the defendants urge that the probation revocation action was excepted from the automatic stay pursuant to 11 U.S.C. § 362(b)(1) which excepts the commencement or continuation of a criminal action or proceeding against the debtor. Thus, the defendants recognize that, in fact, a determination of the scope of the automatic stay is vital to this case.

In *Pennsylvania Dept. of Public Welfare v. Davenport*, — U.S. ——, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990), the United States Supreme Court held that restitution is a "debt" as that term is used in § 1328(a) and in § 101(11). Accordingly, the Supreme Court held that a state-imposed restitution obligation arising from a criminal proceeding is a dischargeable debt under chapter 13.

According to the Supreme Court in *Davenport*, a restitution obligation is a "debt" as defined in § 101(11). The term "debt" is defined as "liability on a claim." *Id.* It therefore follows that restitution is a "claim" under § 101(4). Since a restitution obligation is a "claim," it is subject to the provisions of § 362(a) which prohibit commencing or continuing actions to collect a "claim".

It would be incongruous to rule that a restitution obligation can lawfully be pro-

vided for in a chapter 13 plan (and discharged upon completion of the payments required under the plan), but that the automatic stay does not protect the debtor from punishment for doing so. This result runs completely contrary to the underlying principle of chapter 13 bankruptcy: That a debtor should be granted relief from collection efforts while he attempts to repay his creditors over time and to the best of his ability so that he may obtain a fresh start. Such a result would eviscerate those remaining chapter 13 cases involving dischargeable restitution debts by making it impossible for the debtor to comply with the terms of a confirmed plan where his probation has been revoked and he is incarcerated with no means to complete the plan.

The language used in *Davenport* clearly indicates the Supreme Court's view concerning probation revocation proceedings based on the debtor's failure to pay a restitution obligation:

> Moving beyond the language of § 101, the United States, appearing as amicus in support of petitioners, contends that other provisions in the Code, particularly the exemption to the automatic stay provision, § 362(b)(1), and Chapter 7's distribution of claims provision § 726, reflect Congress' intent to exempt restitution orders from discharge under chapter 13. We are not persuaded, however, that the language or the structure of the Code as a whole supports that conclusion.

> Section 362(a) automatically stays a wide array of collection and enforcement proceedings against the debtor and his property. Section 362(b)(1) exempts from the stay "the commencement or continuation of a criminal action or proceeding against the debtor." According to the Senate Report, the exception from the automatic stay ensures that "[t]he bankruptcy laws are not a haven for criminal offenders." S.Rep. No. 95–989, *supra*, at 51. Section 362(b)(1) does not, however, explicitly exempt governmental efforts to collect restitution obligations from a debtor. Cf. 11 U.S.C. § 362(b)(2) ("collection of alimony, maintenance, or

support" is not barred by the stay). Nonetheless, the United States argues that it would be anomalous to construe the Code as eliminating a haven for criminal offenders under the automatic stay provision while granting them sanctuary from restitution obligations under Chapter 13. (footnote omitted.)

We find no inconsistency in these provisions. Section 362(b)(1) ensures that the automatic stay provision is not construed to bar federal or state prosecution of alleged criminal offenses. It is not an irrational or inconsistent policy choice to permit prosecution of criminal offenses during the pendency of a bankruptcy action and at the same time to preclude probation officials from enforcing restitution orders while a debtor seeks relief under Chapter 13. Congress could well have concluded that maintaining criminal prosecutions during bankruptcy proceedings is essential to the functioning of government but that, in the context of Chapter 13, a debtor's interest in full and complete release of his obligations outweighs society's interest in collecting or enforcing a restitution obligation outside the agreement reached in Chapter 13 plan. *Id.*

The defendants argue that the ruling in *Davenport* only prohibits actions to enforce restitution obligations. They further argue that the case at bar was not such an action. According to the defendants, the probation revocation hearing was a "criminal proceeding" under § 362(b)(1) conducted to further the state's interest in protecting its citizens. The defendants argue that the bankruptcy filing and attempt to affect the restitution obligation was merely evidence that the state court judge considered in deciding that the purposes of probation weren't being served.

The defendants continue that, since the plaintiff was attempting to alter the restitution obligation in bankruptcy, he was not demonstrating the appropriate remorse or contrition for his crime and was therefore no longer a candidate for probation. This analysis leads the defendants to conclude that the proceedings in question were actually criminal in nature and not an effort to enforce payment of a debt.

The problems with this analysis are that it ignores the fact that the hearing would not have occurred but for the plaintiff's failure to pay as ordered and, as a practical matter, it would emasculate the holding in *Davenport.*

The defendants have never disputed that the plaintiff was summoned to appear in state court for the revocation hearings as a result of his failure to pay. Counsel for the defendants admitted in court that, "but for" the plaintiff's failure to pay, there would have been no revocation hearings in state court. There is nothing in the record to indicate any problem with the plaintiff's conduct since probation was ordered except for the fact of bankruptcy and the plaintiff's subsequent failure to pay the restitution obligation as ordered by the state court.[1]

Recognizing that the ruling in *Davenport* would prohibit probation revocation on that basis, however, the defendants argue that objective facts supporting the revocation of probation need not be present, rather, that the subjective motive behind revoking probation is critical. The defendants contend that the motive was not debt collection but rather to protect society's interests.

If that argument prevails, a debtor with a restitution obligation would never be able to successfully assert that his probation was revoked for failure to pay. Instead, the state would always be able to assert, as it has done in this case, before or after the fact, that, despite the fact that no condition of probation was violated except the failure to pay, the true reason for revoking probation was not non-payment but, rather, some subjective standard that the probationer failed to meet. Unfortunately, only the state court judge would be able to set that standard and evaluate the probationer's

---

1. The defendants do not point to any specific fact that supports the claim that the plaintiff is any greater threat to society today than he was when he was released on probation by the state court.

performance against that unarticulated standard. It is apparent that the defendants' analysis of this issue would, as a practical matter, overrule the holding in *Davenport* and render the automatic stay ineffective in this context.

█ In this court's opinion, the subjective motive behind revoking the plaintiff's probation is irrelevant. This court holds that where the state can point to no violation of the conditions of the probation sentencing order other than the failure to pay a restitution obligation after filing a petition under chapter 13 of the Bankruptcy Code, resentencing is prohibited by the automatic stay.

In this case, then, there is no genuine issue of material fact remaining. The court must conclude that probation was revoked solely because the plaintiff exercised his legal right to file a petition in bankruptcy and altered the restitution payment schedule. Thus, under the holding in *Davenport*, the proceeding in question was not a criminal proceeding and not excepted from the automatic stay.

Therefore, the automatic stay prohibited the defendants from taking any action to collect on the claims in question without first obtaining an order granting them relief from the stay.[2]

It is not disputed that the state did not ask for relief from the automatic stay before continuing the judicial proceedings against the plaintiff. Thus, without obtaining relief from the automatic stay, the state court ordered the plaintiff's probation revoked.

In sum, the actions taken by the state in revoking the plaintiff's probation were in violation of the automatic stay. Actions taken in violation of the stay are void. *In re Stringer*, 847 F.2d 549 (9th Cir.1988). Accordingly, the court will enter an order declaring the judgment revoking the plaintiff's probation void.

Some would argue that this result is undesirable in that a convicted criminal will be allowed to avoid incarceration by filing bankruptcy. This argument has been addressed by the United States Supreme Court in *Davenport, supra*.

In addition, however, the practical ramifications of the state court proceedings warrant comment. The plaintiff was employed and free on probation when the state court violated the automatic stay and revoked his probation. The only objective basis for conducting the proceedings and revoking the plaintiff's probation was that he was not paying the restitution obligations according to the terms ordered by the state court.

As previously discussed, there was no allegation or proof that the plaintiff violated any other provision of his probation or that he was any more of a threat to society than he was when the state ordered his release on probation.

As a result of the state court proceedings, the plaintiff is no longer able to work to repay his creditors (including the victim). The defendants concede that this debt is dischargeable, Memorandum in Support of Defendants' Motion to Dismiss, p. 5, and this court has previously ruled from the bench that a chapter 13 case will not be dismissed for failure to make payments where the failure was occasioned by circumstances beyond the debtor's control.

Thus, the practical effect of the action of the state court is to require the plaintiff to remain incarcerated for 36 months without making any payment to his victim or other creditors. At the end of that time, his chapter 13 plan will be complete and he will be entitled to a discharge of all his debts, including the restitution obligations, with-

**2.** The fact that Congress has subsequently amended the law to except restitution obligations from the discharge provisions of chapter 13 does not change the result. This case was filed before that law became effective. Further, in changing the result mandated by *Davenport*, Congress could have, but did not amend § 362(a) or 362(b) to except probation revocation proceedings from the scope of the automat- ic stay. There is no reason to conclude that Congress intended chapter 13 debtors to be subject to imprisonment for a probation violation relative to a restitution obligation that is dealt with in a chapter 13 plan. This is true since it is possible for a debtor to propose to repay a restitution obligation in full under a chapter 13 plan yet under different terms than those ordered as a result of the criminal proceedings.

out having paid anything to the victim or to any of his other creditors. In this particular case, it would appear that the interests of the victim and society would be better served by allowing the plaintiff to remain free on probation while he attempts to make amends to the best of his ability.

It also appears from the transcripts of the hearings that the state court felt the plaintiff should have attempted to contact the state court to reduce his monthly restitution payments before filing for protection under the federal bankruptcy laws. This ignores the fact that the state court cannot stay the collection actions of other creditors while it considers the plaintiff's financial condition. The bankruptcy court and the bankruptcy laws, however, are specifically designed to offer such protection while the debtor attempts to resolve his financial problems. This also ignores the fact that the plaintiff has the right to file for relief under the bankruptcy laws without seeking permission from the state court.

### B. The Writ of Habeas Corpus is Not the Debtor's Exclusive Remedy.

■ The defendants argue that the plaintiff seeks an order releasing him from custody and that such relief must be obtained, if at all, through a writ of habeas corpus. The state relies heavily upon *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) for this proposition. In *Preiser*, the court held that, in determining whether the habeas corpus statutes, 28 U.S.C. §§ 2241 and 2254, control over the potentially conflicting provisions of the Civil Rights Act, 42 U.S.C. § 1983, Congressional intent revealed that the habeas statutes control:

"In amending the habeas corpus laws in 1948, Congress clearly required exhaustion of adequate state remedies as a condition precedent to the invocation of federal judicial relief under those laws. *It would wholly frustrate explicit congressional intent* to hold that respondents in the present case could evade this requirement by the simple expedient of putting a different label on their pleadings."

(emphasis added.) *Id.* at 489–90, 93 S.Ct. at 1836.

While it may be true that there is no clear indication that the Civil Rights Act was intended by Congress to provide an alternative to the habeas statutes, such is not the case in bankruptcy.

In 1978, Congress passed the Bankruptcy Reform Act (the "Code") which has been codified at 11 U.S.C. § 101 et seq. Section 105(a) of Title 11 provided then, as it does today, that:

"The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

The legislative history accompanying that section indicates that Congress intended to give the court as much power as possible to issue *any* order necessary or appropriate to carry out the provisions of the Code:

"Section 105 is similar in effect to the All Writs Statute, 28 U.S.C. 1651, under which the new bankruptcy courts are brought by an amendment to 28 U.S.C. 451. HR 8200 § 213. The section is repeated here for the sake of continuity from current law and ease of reference, and to cover any powers traditionally exercised by a bankruptcy court that are not encompassed by the All Writs Statute. This section is also an authorization under 28 U.S.C. 2283, for a court of the United States to stay the action of a State court." H.R.Rep. No. 595, 95th Cong., 1st Sess. 316–317 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6273–6274.

It is important to note that Congress intended to bring the bankruptcy courts within the purview of the All Writs Statute, 28 U.S.C. § 1651, by amending 28 U.S.C. § 451 at the time the Code was adopted. The All Writs Statute, as the name implies, authorizes courts to issue writs of all kinds, including writs of habeas corpus. It is apparent from the legislative history just recited, that writs of all kinds, including writs of habeas corpus, were considered by Congress when it adopted § 105(a). If Congress had intended to limit the court's

ability to order a prisoner's release to the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254, it surely would have so indicated. Instead, Congress authorized the bankruptcy courts to issue *any* order necessary or appropriate to carry out the provisions of the Code.

■ The fact that Congress's effort to give bankruptcy courts as much power as possible was later limited by the holding in *Northern Pipeline Construction Co. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), does not change the conclusion. The relevant inquiry, after *Preiser*, is *Congressional intent* concerning the exclusivity of the habeas remedy in a bankruptcy context. Congress could have limited the scope of § 105(a) when it amended the Code in 1984 to attempt to cure the defects noted in *Marathon.* Instead, § 105(a) was left intact and the legislative history indicates that § 105 was amended by adding subsection (c) to make "the necessary modifications to accommodate the *continued* jurisdiction of the District Court and its officers." (Emphasis added.) 130 Cong.Rec. S6085, daily ed. May 21, 1984.[3] This court therefore concludes that Congress did not intend to limit the federal courts, in the bankruptcy context, to the habeas statutes. Thus, the holding in *Preiser* is not controlling in this case and the plaintiff's potential remedies include an appropriate order pursuant to 11 U.S.C. § 105(a) as well as a writ of habeas corpus.

■ Even if the habeas statutes were the exclusive remedy available to the plaintiff in this case, it does not follow, as the defendants argue, that the complaint must be dismissed. The defendants argue that the habeas statute, 28 U.S.C. § 2254, requires that the plaintiff exhaust his state remedies before he may seek a writ of habeas corpus and that he has not yet done so. This argument ignores the express language of the statute in question.

28 U.S.C. § 2254(b) provides:

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the court of the State, *or that there is* either an absence of available State corrective process or *the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.*" (Emphasis added.)

■ Thus, if the court finds that circumstances exist that would render the state appeals process ineffective to protect the plaintiff's rights, the plaintiff need not exhaust his state remedies.

In this case, the plaintiff exercised his right to file a bankruptcy petition under the laws of the United States. At the time he did so, he was a free man. As noted above, solely as a result of exercising a lawful right, the state court deprived the plaintiff of his liberty. This action severely undermined, if not destroyed, the plaintiff's rights under federal bankruptcy law. This action was also taken in violation of the automatic stay, as discussed earlier.

If the plaintiff is precluded from bringing the matter before the federal courts, he is forced to appeal to the state court system. The record reflects that the plaintiff's request for a stay of incarceration pending appeal was denied by the state court. The plaintiff is now incarcerated and is left with the delay and uncertainty attendant an appeal in the state system. See O.R.S. Chapter 138.

If the defendants had agreed to release the plaintiff while he pursued his state

---

**3.** The defendants also argue that the fact that 28 U.S.C. § 2256 never became effective evidences Congress's intent to limit habeas powers in the bankruptcy context. *As* plaintiff correctly notes, however, the same fact could be used to argue that Congress did *not* intend to limit the court's habeas powers in the bankruptcy context. Perhaps the most likely explanation for this anomaly in the law is that Congress was attempting to deal with the problems posed by the ruling in *Marathon,* rather than attempting to limit the scope of § 105(a). As discussed elsewhere in this opinion, Congress amended § 105 in 1984 by adding subsection (c). This would have been the ideal opportunity to limit the scope of § 105(a) vis-a-vis the habeas corpus statutes, yet Congress did not do so.

appeal rights, the defendants' argument would be more persuasive. When asked if this was acceptable, however, counsel for the defendants advised this court it was not. Thus, the plaintiff's remedies under state law are ineffective.

■ It must also be remembered, as just discussed, that this court, as a unit of the U.S. District Court, is charged with administering the federal bankruptcy laws as envisioned by the U.S. Constitution and as adopted by Congress. Said Constitution and laws are the supreme law of the land.

> "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Constitution, Article VI, cl. 2.

There is ample precedent for the proposition that a federal court will intervene in state court proceedings where there is an interference by the state court with the federal constitution or federal laws. For a discussion of this principle, see *Minnesota v. Brundage,* 180 U.S. 499, 21 S.Ct. 455, 45 L.Ed. 639 (1901).

It has also been held by the Supreme Court that exhaustion is not necessary or appropriate where the state court is acting without jurisdiction. *Ohio v. Thomas,* 173 U.S. 276, 19 S.Ct. 453, 43 L.Ed. 699 (1899). The Supreme Court has also held that a petition in bankruptcy deprives a state court of jurisdiction to rule on matters affecting the debtor or property of the estate. *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940). In this case, the state court was deprived of jurisdiction to revoke the plaintiff's probation for failure to make payments immediately following the filing of the bankruptcy petition. It would not make sense to require the plaintiff to pursue remedies in a court that had no jurisdiction to rule on the question in the first place. It is axiomatic that the law does not require a futile act.

The legal basis for the plaintiff's argument that his probation cannot be revoked arises solely under the federal bankruptcy laws. The state court is not the proper forum for the resolution of this issue. There is no reason to require the plaintiff to seek relief through the state appeals process when that court lacks jurisdiction and complete and immediate relief can be granted by the federal courts.

Accordingly, even if the habeas corpus statutes were the exclusive remedy available to this plaintiff, the court would rule that the complaint be treated as a petition for a writ of habeas corpus and that circumstances exist that would render the state process ineffective and, therefore, the plaintiff is not required to exhaust his state remedies before proceeding in federal court.

C. Does the Bankruptcy Court have the Power to Order the Release of the Plaintiff?

The defendants correctly point out that there is some question as to this court's power to order the release of the plaintiff. After *Marathon, supra,* it is unclear whether such an order would require execution by an Article III judge rather than an Article I bankruptcy judge. While there is some question whether this court can effectively order the plaintiff's release, there is no question that the U.S. District Court has the power to enter such an order. This court, for the reasons discussed above, hereby recommends to the U.S. District Court for the District of Oregon, that an order be entered requiring the defendants to immediately release the plaintiff. A proposed order is attached hereto as Exhibit "A."

D. Must the State Court Judge be Dismissed as a Party to this Proceeding?

■ The defendants argue that the state court judge who violated the stay was acting in his official capacity. They point out that there is no allegation to the contrary in the complaint and no basis for the judge to be named as a party in his individual capacity.

The complaint seeks declaratory relief and a mandatory injunction requiring the release of the plaintiff. There is no express request for relief against the judge in his individual capacity for violation of the plaintiff's rights other than by way of requiring that court to order the release of the plaintiff. Accordingly, the court will enter an order dismissing the complaint as to the judge in his individual capacity without prejudice to the plaintiff's rights to assert any legally cognizable claim for damages he may have against this individual under applicable state or federal law and without implying that he is not required to take any official action necessary to carry out any order entered by this court and the U.S. District Court in this proceeding.

### Conclusion

The court will enter an order granting summary judgment in favor of the plaintiff. The judgment shall void the state court judgment revoking the plaintiff's probation and recommend that the United States District Court enter an appropriate order requiring the state to immediately release the plaintiff from custody on the condition that he comply with all the conditions of his probation except for the payment of the restitution and compensatory fine obligations. The payment of those obligations is governed by the plaintiff's confirmed chapter 13 plan. This opinion constitutes the court's findings of fact and conclusions of law and in accordance with B.R. 7052 they will not be separately stated.

### EXHIBIT A

### ORDER

The United States Bankruptcy Court having entered its opinion and order herein and this court having adopted the findings and conclusions contained therein, now, therefore, it is hereby

ORDERED that the defendants in this adversary proceeding cause the immediate release of the plaintiff, Scott Matthew Hucke, from custody on the condition that Hucke comply with all the provisions of the original sentencing judgment dated May 31, 1990. This order does not excuse Hucke from complying with all the provisions of the original sentencing judgment with the exception of the provisions concerning the payment of the restitution and compensatory fines. If the chapter 13 case is dismissed or converted, the original sentencing judgment shall again become effective in its entirety.

DATED this _____ day of May, 1991.

_____

United States District Court Judge