## Ex parte BASS.

(Circuit Court, W. D. Arkansas, Harrison Division.   January 1, 1912.)

COURTS (§ 495*)—COMITY—STATE AND FEDERAL COURTS.

A federal Circuit Court will not determine the constitutionality as applied to interstate business of a state statute requiring certain sales agents to procure a license in a habeas corpus proceeding to procure the discharge of one charged with violating the statute, where it appears that the question has been passed upon by the Supreme Court of the state, and that proceedings to review that decision are pending in the United States Supreme Court, and where it appears that petitioner's personal liberty is not so much involved as the desire of his employer to transact business in the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1376–1385; Dec. Dig. § 495.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

Petition by W. K. Bass for writ of habeas corpus.  Writ discharged, and petitioner remanded.

J. Merrick Moore and A. C. Lyon, for petitioner.
Prentiss Rowe, for respondent.

YOUMANS, District Judge.  In this case a writ of habeas corpus was issued on the following petition:

"Comes now your petitioner, W. K. Bass, and respectfully shows to the court that he is a citizen of the United States, and a citizen and resident of the state of Texas; that he is a salesman or drummer acting as agent and representative for the Spaulding Manufacturing Company, of Grinnell, Iowa, a copartnership, all members of which are citizens of the United States and citizens and residents of the state of Iowa; that your petitioner is engaged in the business of selling buggies and spring wagons by sample in the state or Arkansas, by taking orders therefor for future delivery, said buggies or spring wagons to be thereafter shipped from the warehouse of the Spaulding Manufacturing Company at Seligman, Mo., to said purchasers in the state of Arkansas, in pursuance of the orders taken therefor by your petitioner; that your petitioner has shown his sample vehicle to numerous parties within the state of Arkansas, and has taken orders from numerous purchasers for vehicles to be delivered as aforesaid, but that no vehicles whatever have yet been delivered to any purchasers in pursuance of said orders thus taken by your petitioner; that said vehicles are shipped into Arkansas only after orders have been secured for each vehicle, and are shipped to be applied on said orders, said vehicles after orders are received for same being loaded on the cars at Seligman, Mo., each being separated into packages, tagged with the name of the purchaser, and being unloaded after delivery at destination, put together and directed delivered to purchaser by a deliveryman of said Spaulding Manufacturing Company; that while engaged in the performance of his duties as such salesman or agent aforesaid in Boone county, Ark., your petitioner was on or about the 29th day of November, A. D. 1911, arrested and taken into custody by C. B. Francis, deputy constable of Boone county, Ark., who is a citizen and resident of Boone county, Ark., under and by virtue of a certain warrant of arrest issued by J. W. Andrews, justice of the peace of Boone county, Ark.; that ever since said 29th day of November, A. D. 1911, your petitioner has been and now is in the custody of said C. B. Francis, deputy constable of Boone county, Ark., in the town of Harrison, Ark., and has been since said date, and now is, restrained of his

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

liberty by the said C. B. Francis, deputy constable of Boone county, Ark., having on the 29th day of November, 1911, been convicted and fined in the sum of $200 by the justice of the peace; that your petitioner is informed and believes that said warrant of arrest and said proceedings thereunder were issued and taken under the assumed authority purported to be conferred by a certain act of the General Assembly of the state of Arkansas (known as Act 97 of Laws 1909 of Arkansas, page 292); that said act of the state of Arkansas is inconsistent with and repugnant to article 1, § 8, of the Constitution of the United States, which provides that Congress shall have power to regulate commerce among the several states; that said act of the state of Arkansas is inconsistent with and repugnant to article 4, § 2, of the Constitution of the United States, which provides that the citizens of each state shall be entitled to all privileges and immunities of the citizens in the several states; that said act of the state of Arkansas is inconsistent with and repugnant to the fourteenth amendment to the Constitution of the United States, which provides that no state shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws; that by reason of the premises said act of the state of Arkansas is wholly void and of no effect, and confers no jurisdiction whatever upon officers of the state of Arkansas who attempt to enforce it; that said warrant of arrest sets out no crime, under the laws of the state of Arkansas or of the United States, and is likewise wholly void and of no effect, and the arrest of your petitioner thereunder is wholly illegal and void, and said justice was wholly without jurisdiction to try or convict your petitioner as aforesaid, and that said judgment and conviction are wholly void; that your petitioner has committed no act or acts which violate any valid law of the state of Arkansas or of the United States, and your petitioner is being restrained of his liberty without authority of law, and is in custody in violation of the Constitution of the United States.

"Your petitioner further shows to the court that he is engaged in the business of a traveling salesman and of soliciting orders for vehicles by the use of a sample for his employers, the Spaulding Manufacturing Company, of Grinnell, Iowa, and that, in the pursuit of his said business or occupation, he has a right to and desires to and will continue to carry on said business within the state of Arkansas, and that, in consequence thereof, your petitioner believes that he will be subjected to numerous and repeated arrests and imprisonments under said invalid law for each sale made or order taken or made, and that he will be constantly and repeatedly arrested and prosecuted for engaging in legitimate interstate commerce, and for doing acts which are authorized and permitted and protected by the Constitution of the United States.

"Your petitioner further shows to the court that his employers, the Spaulding Manufacturing Company, of Grinnell, Iowa, have various other traveling salesmen ready to carry on their employment or business in like manner in various parts of the state of Arkansas, soliciting orders and carrying on business in precisely the same way as your petitioner, who will in like manner be subjected to repeated arrests and prosecutions under said invalid Arkansas law, and be compelled to suffer repeated imprisonment or furnish large amounts of money for bonds and expenses and costs, with the result that the lawful business of your petitioner and of his associates and of their employer, the Spaulding Manufacturing Company, will be totally destroyed and annihilated unless prompt and effective relief be given as prayed for herein.

"Your petitioner further shows to the court that many other traveling salesmen, canvassers, or drummers employed by other concerns or companies in various states outside of the state of Arkansas will be prevented and prohibited from carrying on lawful interstate commerce for their employers with citizens of the state of Arkansas, and that in the conduct of their lawful interstate business they will be subjected to repeated arrests and imprisonments under said invalid Arkansas law, and that their lawful business in engaging in interstate commerce will be entirely destroyed and prohibited unless relief is given as prayed for herein.

"Wherefore, your petitioner prays that a writ of habeas corpus may issue from this court, addressed to the said C. B. Francis, commanding him to bring the body of your petitioner forthwith before this court, and then and there show the cause of his detention; and your petitioner prays that he may have judgment discharging him forthwith from custody."

For return to the writ the deputy constable, C. B. Francis, states that he holds the petitioner "by virtue of a warrant of commitment issued by J. W. Andrews, justice of the peace," a copy of which commitment is attached to his return and made part thereof. The commitment, omitting the formal parts and the signature, is as follows:

"Whereas, on the 29th day of November, 1911, the above-named defendant, W. K. Bass, was before me as justice of the peace, in Harrison township, in Boone county, Arkansas, convicted of the crime of peddling carriages and hacks without license in violation of the acts of Arkansas in Session Acts of 1909, at pages 292 and 293, and fined the sum of $200 and costs of said prosecution: Now, therefore, you are hereby commanded to take into your custody the said W. K. Bass and him safely deliver to the jailer of Boone county, Arkansas, to be by him confined as provided by law, until discharged by payment of said fine and costs or duly discharged as the law provides.

"The said defendant having announced in open court that he would not pay said fine and costs.

"Given under my hand as such justice of the peace on this November 29th, 1911."

At the hearing it was admitted by the attorney for the deputy constable that the allegations of fact in the petition were true. The discharge of the petitioner is sought on the ground that the act of the General Assembly of the state of Arkansas under which the petitioner was convicted in its application to the facts in his case is contrary to the Constitution of the United States. The act in question is as follows:

"Section 1. That hereafter before any person, either as owner, manufacturer or agent, shall travel over and through any county and peddle or sell any lightning rods, steel stove range, clock, pump, buggy, carriage, or other vehicle, or either of said articles, he shall procure a license as hereinafter provided from the county clerk of such county, authorizing such persons to conduct such business.

"Sec. 2. That before any person shall travel over or through any county and peddle or sell any of the articles mentioned above he shall pay into the county treasury of such county the sum of $200.00, taking the receipt of the treasurer therefor, which receipt shall state for what purpose the money was paid. The county clerk of such county upon the presentation of such certificate shall take up the same and issue to such person a certificate or license, authorizing such person to travel over such county and sell such articles, or article, for a period of one year from the first day of January preceding the date of such license.

"Sec. 3. Any person who shall travel over or through any county in this state and peddle or sell, or offer to peddle or sell any of the above enumerated articles without first procuring the license herein provided for shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined in any sum not less than $200.00, nor more than $500.00.

"Sec. 4. That any person who shall travel over or through any county in this state and peddle or sell any of the articles mentioned above, shall be deemed and held to be a peddler, under the provisions of this act.

"Sec. 5. All laws and parts of laws in conflict with this act are hereby repealed and this act shall take effect and be in force from and after its passage."

This act was held to be constitutional by the Supreme Court of Arkansas in the case of Ex parte Byles, 93 Ark. 612, 126 S. W. 94. Afterwards the same act was, by a divided court, held not to be inconsistent with, or repugnant to, the commerce clause of the federal Constitution. Crenshaw v. State, 95 Ark. 464, 130 S. W. 569. It is admitted by the attorneys for the petitioner that both of these cases have been taken to the United States Supreme Court on writs of error, and that they are now pending in that court. Therefore the first question to be considered here is that of comity. What is the duty of a federal court under those circumstances?

In the case of Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868, the Supreme Court formulated a rule to govern federal courts in application for habeas corpus for the discharge of persons in the custody of state officers. In the opinion in that case the court said:

"We cannot suppose that Congress intended to compel those courts, by such means, to draw to themselves, in the first instance, the control of all criminal prosecutions commenced in the state courts exercising authority within the same territorial limits, where the accused claims that he is held in custody in violation of the Constitution of the United States. The injunction to hear the case summarily, and thereupon 'to dispose of the party as law and justice require,' does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the states, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution. When the petitioner is in custody by the state authority for an act done or omitted to be done in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof, or where, being a subject or citizen of a foreign state, and domiciled therein, he is in custody, under like authority, for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, or order, or sanction of any foreign state, or under color thereof, the validity and effect whereof depend upon the law of nations—in such and like cases of urgency, involving the authority and operations of the general government, or the obligations of this country to, or its relations with, foreign nations, the courts of the United States have frequently interposed by writs of habeas corpus and discharged prisoners who were held in custody under state authority. So, also, when they are in the custody of a state officer, it may be necessary, by use of the writ, to bring them into a court of the United States to testify as witnesses. The present cases involve no such considerations. Nor do their circumstances, as detailed in the petitions, suggest any reason why the state court of original jurisdiction may not without interference upon the part of the courts of the United States pass upon the question which is raised as to the constitutionality of the statutes under which the appellant is indicted. The Circuit Court was not at liberty, under the circumstances disclosed, to presume that the decision of the state court would be otherwise than is required by the fundamental law of the land, or that it would disregard the settled principles of constitutional law announced by this court, upon which is clearly conferred the power to decide ultimately and finally all cases arising under the Constitution and laws of the United States."

The petition for writ of habeas corpus in that case was after indictment, but before trial in the state court.

In the case of Baker v. Grice, 169 U. S. 284, 18 Sup. Ct. 323, 42 L. Ed. 748, the court said:

"The court below had jurisdiction to issue the writ and to decide the questions which were argued before it. Ex parte Royall, 117 U. S. 241 [6 Sup. Ct. 734, 29 L. Ed. 868]; Whitten v. Tomlinson, 160 U. S. 231 [16 Sup. Ct. 297, 40 L. Ed. 406]. In the latter case most of the prior authorities are mentioned. From these cases it clearly appears, as the settled and proper procedure, that while Circuit Courts of the United States have jurisdiction, under the circumstances set forth in the foregoing statement, to issue the writ of habeas corpus, yet those courts ought not to exercise that jurisdiction by the discharge of a prisoner unless in cases of peculiar urgency, and that, instead of discharging, they will leave the prisoner to be dealt with by the courts of the state; that, after a final determination of the case by the state court, the federal courts will even then generally leave the petitioner to his remedy by writ of error from this court. The reason for this course is apparent. It is an exceedingly delicate jurisdiction given to the federal courts by which a person under an indictment in a state court and subject to its laws may, by the decision of a single judge of the federal court, upon a writ of habeas corpus, be taken out of the custody of the officers of the state and finally discharged therefrom, and thus a trial by the state courts of an indictment found under the laws of a state be finally prevented."

In that case the writ was applied for after indictment, and before trial in the state court, but the allegation was made that the trial was purposely delayed. Notwithstanding that fact, the decision of the lower court discharging the petitioner was reversed, and it was directed that an order be entered remanding him to the custody of the state officers.

In the case of Minnesota v. Brundage, 180 U. S. 499, 21 Sup. Ct. 455, 45 L. Ed. 639, it was alleged in the petition that the petitioner had been convicted in the municipal court of Minneapolis, and had been adjudged to pay a fine, and, in default thereof, to be committed to the workhouse for 30 days. He was discharged by the Circuit Court. In the opinion in that case the court said:

"We have held, upon full consideration, that, although under existing statutes a Circuit Court of the United States has jurisdiction upon habeas corpus to discharge from the custody of state officers or tribunals one restrained of his liberty in violation of the Constitution of the United States, it is not required in every case to exercise its power to that end immediately upon application being made for the writ."

Further, in the same case, the court said:

"The present case does not come within any of the exceptions to the general rule announced in the cases above cited. It is not in any legal view one of urgency. The accused does not, in his application, state any reason why he should not be required to bring the question involved in the prosecution against him before a higher court of the state and invoke its power to discharge him if in its judgment he is restrained of his liberty in violation of the Constitution of the United States. It cannot be assumed that the state court will hesitate to enforce any rights secured to him by that instrument; for upon them equally with the courts of the Union rests the duty to maintain the supreme law of the land. Robb v. Connolly, 111 U. S. 624, 637 [4 Sup. Ct. 544, 28 L. Ed. 542]. If the state court declined to recognize the federal right specially claimed by the accused, the case could be brought here for review."

It is thus seen that the rule in the Royall Case is extended so that the line of procedure is stated to be an appeal to the highest court of

the state having jurisdiction, and a writ of error from it to the Supreme Court of the United States.

In the case of Reid v. Jones, 187 U. S. 153, 23 Sup. Ct. 89, 47 L. Ed. 116, the court said:

"One convicted in a state court for an alleged violation of the criminal statutes of the state, and who contends that he is held in violation of the Constitution of the United States, must ordinarily first take his case to the highest court of the state, in which the judgment could be reviewed, and thence bring it, if unsuccessful there, to this court by writ of error; that only in certain exceptional cases, of which the present is not one, will a Circuit Court of the United States, or this court upon appeal from a Circuit Court, intervene by writ of habeas corpus in advance of the final action by the highest court of the state."

The rule was restated in the case of Drury v. Lewis, 200 U. S. 1, 26 Sup. Ct. 229, 50 L. Ed. 343, and Urquhart v. Brown, 205 U. S. 179, 27 Sup. Ct. 459, 51 L. Ed. 760. The rule so announced was applied in the case of Ex parte Crowder (C. C.) 171 Fed. 250, and Ex parte Counort (C. C.) 188 Fed. 398.

It is contended that it would avail the petitioner nothing to appeal from the judgment of the justice of the peace, because the Supreme Court of the state has already declared the act applicable to the character of business that he was conducting. I do not think that that is a sufficient ground for an exception to the rule above stated. Besides, I cannot but believe that the petitioner was well advised of the act in question and the construction placed thereon by the Supreme Court of Arkansas before he undertook to take orders in this state for his principal. It appears on the face of the petition that he is the agent of the Spaulding Manufacturing Company, of Grinnell, Iowa. In the case of Ex parte Crowder, supra, in which the writ was discharged and the petitioner remanded to the custody of the state officers, the petitioner was also an agent of the same company. The principal, at least, was well advised of the rule above referred to. It is fair to presume that the petitioner was informed of it before he entered this state. Be that as it may, there is no such urgency shown in this case as would warrant this court in anticipating the decision of the Supreme Court of the United States on the question of the constitutionality of the act under which petitioner was convicted. In the case of Minnesota v. Brundage, supra, the court said:

"We do not think that the exercise by a federal court of its power upon habeas corpus to discharge one held in custody by the state authorities and charged with a violation of a state enactment should be materially controlled by any consideration of the extent of particular business interests that may be affected by a prosecution instituted in a state tribunal against him, or of the indirect effect of his detention in custody upon the rights of the general public."

It is evident in this case that the personal liberty of the petitioner is not so much involved as the desire of his principal to do business in the state of Arkansas. It is more important that there should be an orderly administration of the law than that the right of the petitioner to sell buggies in Arkansas, without paying a license for the privilege, should be immediately declared. It is better to postpone the exercise of a constitutional right for a time than to attempt to

short-circuit the approved course of procedure by which the delicate balance between state and federal courts is preserved. This may necessitate some delay, but delay is incident to the enforcement of any right by legal methods. The facts in this case do not show such a condition as would justify a federal court in assuming jurisdiction and discharging the petitioner. It is unnecessary to pass on the question as to whether petitioner was or was not engaged in interstate commerce.

It is ordered that the writ be discharged, and that the petitioner be remanded to the custody of the deputy constable.