### ROGERS *v.* STATE.

### BARNHILL *v.* STATE.

### Opinion delivered February 12, 1912.

INTERSTATE COMMERCE—PEDDLING.—Where a manufacturer of vehicles, having its place of business in another State, through its travelling salesmen, went from house to house soliciting orders in this State, and shipped the vehicles so ordered from its place of business to this State tagged with the purchaser's name, and sent a delivery man to make delivery of the vehicles within this State, and made sales in no other manner, such salesmen were guilty of violating the peddling statute of April 1, 1909.

Appeal from Greene Circuit Court; *W. J. Driver*, Judge; affirmed.

#### STATEMENT BY THE COURT.

These are two appeals prosecuted by the two defendants from judgments of conviction had upon separate trials. The facts and questions involved in the two cases are the same, and for that reason the appeals are considered together. The prosecutions were instituted before a justice of the peace upon separate informations charging the defendants with a violation of the peddling statute, approved April 1, 1909, which provides that, "before any person, either as owner, manufacturer or agent

shall travel over and through any county and peddle and sell any lightning rod, steel stove range, clock, pump, buggy, carriage or other vehicle, or either of said articles, he shall procure a license, " etc.   Acts 1909, p. 292.   The trials before the justice of the peace and in the circuit court, to which appeals had been taken, resulted in the conviction of the defendants.   The cases were heard upon an agreed statement of facts, which is as follows:

"The Spaulding Manufacturing Company is a copartnership composed of H. W. Spaulding, F. E. Spaulding and E. H. Spaulding, all of whom are citizens and residents of Grinnell, Iowa, at which place is located the general office of the company and the factory, in which are manufactured the vehicles and wagons which they sell through traveling salesmen throughout Arkansas and other States in the Union.   They have no factory at any other place than Grinnell, Iowa, and no regular place of business or branch house in the State of Arkansas. The manner in which the Spaulding Manufacturing Company had been, a long time prior to and at the time of this alleged offense, doing business in this State is as follows:

"The company has, and maintains, at Memphis, Tennessee, in carload lots stored in a wareroom, carriages, buggies and vehicles of different grades and kinds manufactured by them, which are in charge of an agent of the company.   It also has a division superintendent, or manager, by the name of Will Warren, in charge of its salesmen in Greene County, Arkansas, and other counties in Arkansas.   It also has in its employ a certain number of salesmen who travel over and through the counties in this State assigned to them going from place to place, taking orders and making contracts for the sale of vehicles, and among them is the defendant, Rogers, a part of whose territory assigned to him by the company being Greene County, Arkansas. Within the last twelve months, and only recently, the defendant, Rogers, has been travelling over and through Greene County, going from place to place therein, soliciting and taking orders and notes for buggies from residents of said county.   Each salesman is furnished with one or more sample buggies, with which he travels over and through the county assigned to him, soliciting orders.   In no case does the salesman sell the sample, and no sample has been sold or

delivered by said defendant, Rogers, nor does he solicit orders for the sale of such samples. Upon giving an order for a vehicle, the purchaser signs a note or memorandum of purchase, a blank form and copy of which is hereto attached, marked exhibit "A," stipulating for the delivery of said vehicle within a certain number of days, usually thirty. The purchaser also delivers to the salesman, at the time the order is made, his note for the purchase price of such buggy or vehicle. A copy of said form of note-is hereto attached as exhibit "B" to this agreed statement of facts, both of which exhibits are hereby made a part hereof. All orders are transmitted by the salesmen to their respective division superintendents; in this instance the orders obtained by Rogers being transmitted by him to the said Warren. It is then the duty of the division superintendent to pass upon the financial responsibility of those giving the orders. If the said orders are by the said Warren approved, he then directs the representative of the company at Memphis, to make delivery on the same. The delivery is made as follows:

"The vehicles designated in the orders are selected by the company's agent in charge from the stock on hand according to the respective style mentioned in the contracts, and in sufficient numbers according to the styles sold, as shown by the orders, to supply those contracted for in any given community at any one interval, and are placed on board a car at Memphis, the wheels and shafts being first taken off of the body of the vehicle. The body of the vehicle is tagged with the name of its respective purchaser, the wheels or shaft, bearing no tag or name of the purchaser, being also loaded into the same car, and capable of identification with the body of which they are a part, by reason of the fact that they are suited for and a part of the buggy mentioned in the contract of purchase. The shipment is consigned to the order of the Spaulding Manufacturing Company, at a place near where the vehicles are to be delivered, in this instance, at Jonesboro, Craighead County, Arkansas. A representative of the Spaulding Manufacturing Company, called a delivery man, receives from the railroad company at Jonesboro the vehicles there consigned to his order. No storehouse is maintained at that point, the method of business being to unload the vehicles, to attach to the body of

each vehicle the wheels and the shafts belonging to, and of the grade and kind sold, which requires only a few moments to the vehicle. The vehicles are then delivered directly by the company's delivery man to their respective purchasers. The delivery man is usually a different person from the salesman taking the order.

"In accordance with this method and character of doing business, P. L. Rogers, the defendant, as an agent of the company on the_____days of September, 1911, travelled over and through Greene County, Arkansas, from place to place, and took orders from William Ridge, Mrs. Harris, and C. Hooker, in Greene County, Arkansas, having each of these to sign the usual order and note in manner and form as above described, which said orders were approved by the proper agent of the Spaulding Manufacturing Company. The vehicles have been delivered on said orders."

It was further agreed that no vehicle except the samples above mentioned were brought into the State or stored therein except for the purpose of delivery upon orders previously taken, and that no vehicle was sold except upon such order taken for the vehicle prior to the time it was brought into the State. It was further agreed that neither of the defendants, nor their employer, had taken out the license prescribed by the act.

*A. C. Lyon, John M. Moore, W. B. Smith* and *J. Merrick Moore*, for appellants.

The act is a direct interference with interstate commerce and void, as contended in 95 Ark. 464. 187 U. S. 632; 153 *Id.* 289; 218 *Id.* 124; 12 Wheat. 419, 444; 120 U. S. 489; 82 Ark. 314, 315; 127 U. S. 640; 153 *Id.* 289.

*Hal L. Norwood*, Attorney General, and *Wm. H. Rector*, Assistant, for appellee.

95 Ark. 464 is conclusive of these cases. The tagging of an original package with the purchaser's name is not necessarily an incident of interstate commerce. 203 U. S. 507. 218 U. S. 124 decides no new principle. The judgments are right, or 95 Ark. 464 should be overruled.

FRAUENTHAL, J., (after stating the facts). The facts of these cases are identical in every essential particular, except one, with the facts of the case of *Crenshaw* v. *State*, 95 Ark.

464, in which a prosecution for the violation of this statute was considered and a conviction thereunder sustained. The particular in which these cases apparently differ from the Crenshaw case is that in the case at bar the vehicles were separately tagged with the names of the respective purchasers at the time they were placed on board the cars at Memphis, Tennessee. The vehicles, however, were loaded and transported in one shipment and consigned to the Spaulding Manufacturing Company at Jonesboro, where they were unloaded and thereafter delivered to the purchasers who, only after inspection and acceptance, received them. In the Crenshaw case, the ranges were not tagged or noted with the names of the purchasers at the time they were delivered to the common carrier at St. Louis.

We do not think that the tagging of the vehicles with the names of the persons executing orders therefor, under the facts adduced in these cases, distinguishes them from the Crenshaw case in any particular that would declare the evidence in these cases lacking in any ingredient essential to constitute a violation of this statute, or that it would make the shipment a subject-matter of interstate commerce any more than the shipment involved in the Crenshaw case. The gist of the offense created by this statute does not consist in making sales without license but in peddling without license. As is held in the case of *Crenshaw* v. *State, supra,* in order to constitute peddling, there must be the element of travelling from place to place, over and through the county, for the purpose of making sales. The statute does not declare it an offense to make sales, nor does it seek to impose a license fee or tax on sales, but only makes it an offense for one to go about from place to place, from residence to residence, in and through the county in the prosecution of a wayfaring business, without procuring license, whether in making sales or in taking orders. As was said relative to a statute quite similar to this by the Supreme Court of the United States: "Its object in requiring peddlers to take out and pay for licenses and to exhibit their licenses on demand to any peace officer or to any citizen householder of the county appears to have been to protect the citizens of the State against the cheats and frauds and even thefts which, as the experience of ages has shown, are likely to attend itinerant and irresponsible peddling from place to place and from door to door."

*Emert* v. *Missouri,* 156 U. S. 296. This statute is directed at an itinerant occupation which may endanger the peace and safety of the citizens of the State, and not at a business which only involves the sale of property. It is but the exercise of the police power of the State, and, as was said in the above case of *Emert* v. *Missouri, supra,* "it is nowise repugnant to the power of Congress to regulate commerce among the several States, but is a valid exercise of the power of the State over persons in business within its borders."

The question as to the place at which the sale was made and at which the title to the property passed is not essentially different in these cases from that involved in the Crenshaw case; because in these cases it was provided in the orders given by the prospective purchasers of the vehicles that they were purchased in effect upon condition that when the vehicles were delivered to them in Greene County they should be approved by them after an inspection and acceptance thereof. So that the sales were not really consummated until the purchasers actually had inspected and accepted the vehicles in Greene County. The mere fact that the vehicles were tagged in the names of the prospective purchasers when the shipment was made at Memphis did not change 'the character of the act committed by these defendants, which consisted in going from house to house and residence to residence throughout the county in taking the orders, and thus in peddling. It is true that in the case of *Crenshaw* v. *State, supra,* the case of *Rearick* v. *Pennsylvania,* 203 U. S. 507, is referred to, and this court stated that the facts in that case differed from the Crenshaw case in that the ranges in the Crenshaw case were not tagged with the names of the purchasers. But the court did not base its opinion in that case upon the ground that the ranges were not tagged in the names of the purchasers, or that the Rearick case was decisive in event the ranges had been so tagged. It based its decision upon the ground that the act of peddling prohibited by this statute without license consisted in going about from place to place, over and through the county, for the purpose of making sales; that the statute regulating such acts was but the exercise of the police power of the State in protecting its citizens; that it in nowise affected interstate commerce or any business or thing which was the subject-matter of interstate

commerce. We are of the opinion that the facts in the cases at bar are, in every essential particular, analagous to those in the Crenshaw case. In the Crenshaw case the constitutionality of this peddling statute, under similar facts and conditions, was upheld, and we see no reason for changing that decision.

It has been held by the Supreme Court of the United States that State statutes requiring that notes, otherwise negotiable instruments, the consideration for which is a patent right or patented article, should be executed in a prescribed manner or otherwise be invalid as negotiable paper or even void, are not in contravention of any provision of the Federal Constitution or of any power given to Congress to legislate relative to the subject-matter of such transactions. This ruling is based upon the ground that such State legislation is but the exercise of the police power of the State in the protection of its citizens against fraud and imposition, which common experience has shown can be more easily perpetrated in cases where the sale of patent rights and patented articles is the subject-matter of the transaction. *Allen* v. *Riley*, 203 U. S. 347; *Woods* v. *Carl*, 203 U. S. 385; *Ozan Lumber Co.* v. *Union County Bank*, 207 U. S. 251.

In the latter case it is said: "The various itinerant venders of patented articles, whose fluency of speech and carelessness regarding the truth of their representations might almost be said to have become proverbial, were of course in the mind of the Legislature, and were included in this legislation. Indeed they are the principal people to be affected by it." In the latter case the transaction involved a contract of sale concerning a matter which was the subject of interstate commerce; and while the question as to whether or not such State legislation relative to patent notes was affected by reason of the fact that the patented article sold was shipped in interstate commerce was not expressly passed on in the opinion rendered by the Federal Supreme Court, it does appear to have met the attention of the United States Circuit Court of Appeals in that case, and is there noted. *Union County Bank* v. *Ozan Lumber Co.*, 179 Fed. 710. But in those cases legislation of this character is recognized as a valid police regulation enacted by the State for the peace and security of its citizens. The

peddling statute of this State, we think, is legislation of that character, and is for that reason valid.

The judgments are accordingly affirmed.

WOOD, J., dissents.